VREELAND'S EXECUTORS *vs.* RYNO'S EXECUTOR and ADMINISTRATOR.

1. The act of 1852 gave to married women only the *jus tenendi* of their property, not the *jus disponendi*.

2. A married woman has no power, under the act of 1864, to dispose by will of any interest to which her husband is, at her death, entitled by law in her real or personal property. After her death he may, as her administrator, reduce to possession her choses in action not reduced to possession in her lifetime.

3. A will of a married woman, living separate from her husband, but made without his consent or knowledge, bequeathing to another a legacy not received by her, nor reduced by him to possession during her lifetime, is of no effect as against the husband. He, therefore, and not her executor, is entitled to receive the legacy. His rights are not forfeited by his adultery or desertion of his wife.

Bill of interpleader. On exceptions to master's report.

*Mr. John A. Blair* and *Mr. S. B. Ransom*, for the exceptions.

*Mr. J. Dixon, junior,* contra.

THE CHANCELLOR.

The bill in this cause was filed by the executors of Hartman Vreeland, deceased, to determine the question as to which of two claimants to a legacy in their hands is entitled to receive it. These claimants are the executor of the will of Sarah C. Ryno, the legatee, and her husband, who is her administrator. She became entitled to the legacy while she was the wife of Addis E. Ryno, the administrator. She did not, however, receive it, nor did he reduce it to possession in her lifetime. Her husband did not consent to, nor know of the making of her will, and it was proved without his knowledge of its existence. By it she gave all her property to her mother for life, and then to her sisters. She died on or about the first of May, 1869. She and her husband had lived separate for many years before her death. On behalf of her executor, it is alleged that her husband deserted her, and committed adultery; and it is insisted that, by reason thereof, he had at the time of her death forfeited all claims to her estate, if indeed he would otherwise have had any under the acts of 1852 and 1864; the former of which is known as the "Married Women's act," and the latter confers testamentary power upon married women. Both the defendants having answered, the cause was referred, by consent, to a master upon its merits,

and the master reported thereon in favor of the executor. The administrator excepted to the report, and the cause is now before me on the exceptions. It is settled that the act of 1852 gave to married women only the *jus tenendi* of their property, and not the *jus disponendi*. *Naylor* v. *Field*, 5 *Dutcher* 287 ; *Belford* v. *Crane*, 1 *C. E. Green* 265. By the act of 1864, it is declared, that any will or testament by any married female, above the age of twenty-one years, thereafter made, of any real or personal property, shall be held and taken to be as valid and effectual in law as if she were, at the time of the making of such will or testament, a feme sole, and unmarried; provided always, that nothing in the act contained shall be so construed as to authorize any married woman to dispose of, by will or testament, any interest to which her husband then was, or would be at her death, entitled by law, in her real or personal property ; but such interest shall remain in and survive to the husband, in the same manner as if such will had not been made. By law, the husband then had an interest in the choses in action of the wife, and could reduce them to possession at pleasure, and when so reduced they became his absolutely, and, on his death, went to his representatives. Such of them as had not been reduced to possession by him, at his death, still remained hers, and, on her death, went to her representatives, and not to his. After her death he might, as her administrator, reduce to possession her choses in action not reduced to possession in her lifetime. And he would hold them *jure mariti.* She could not make a will of chattels without his consent. *Williams on Ex'rs* 39 ; *Van Winkle* v. *Schoonmaker*, 2 *McCart.* 384. The act of 1852, while it protects the property of the married woman during her life, does not, at her death, affect the law of succession as to her estate, real or personal. *Porch* v. *Fries*, 3 *C. E. Green* 205. Such has been the construction of a like statute in New York. *Ransom* v. *Nichols*, 22 *N. Y.* 110 ; *Ryder* v. *Hulse*, 24 *N. Y.* 372 ; *Barnes* v. *Underwood*, 47 *N. Y.* 353. The testamentary power given by the act of 1864, is partial only, expressly saving the legal rights of the

husband.  It seems to me clear, that the will of Mrs. Ryno was of no effect whatever as against her husband, and that he, as her administrator, might reduce her choses in action to possession.  Nor do I think that his adultery, or his desertion of her, would have worked any forfeiture of his rights in the premises.  He appears, however, to have supported his wife, though living apart from her, up to about the time of her death, and the arrangement into which he had entered for her support, and under which he had for years provided for her maintenance, was subsisting when she died.  He was entitled, by law, to administration of his wife's estate.  He holds letters, accordingly.  The existence of the letters testamentary creates no obstacle to a decree in favor of the husband.  He is, by law, entitled to the money, and it should be paid to him, deducting therefrom, however, and paying to the executor, the funeral expenses of the wife, which he has paid.

The exceptions are sustained, but without costs.  There will be a decree in accordance with this decision.  The complainants are entitled to their costs out of the fund.